IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-23-2-SLR |
| | ) | |
| PAWEL DYNKOWSKI, a/k/a | ) | |
| PAUL DYNKOWSKI, a/k/a "EVO," | ) | |
| JOSEPH MANGIAPANE, JR., and | ) | |
| MARC RIVIELLO, | ) | |
| | ) | |
| Defendants. | ) | |

---

David C. Weiss, United States Attorney for the District of Delaware and Shannon Thee Hanson and Keith M. Rosen, Assistant United States Attorneys for the District of Delaware. United States Attorney's Office, District of Delaware, Wilmington, Delaware. Attorneys for Plaintiff United States of America.

Robert S. Wolf, Esquire of Gersten Savage LLP, New York, New York.  Attorney for Defendant Joseph Mangiapane, Jr.

---

**MEMORANDUM OPINION**

Dated:  June 29, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On April 16, 2009, a grand jury returned a nine-count second superseding indictment with a notice of forfeiture against defendants Pawel Dynkowski ("Dynkowski"),[1] Joseph Mangiapane, Jr. ("Mangiapane") and Marc Riviello ("Riviello").[2] (D.I. 10) The indictment charges Mangiapane with conspiracy to commit securities fraud (counts one and six), securities fraud (count seven), wire fraud (count eight), conspiracy to commit money laundry (counts four and nine) and money laundering (count five).[3] At his June 24, 2009 arraignment, Mangiapane entered a plea of not guilty. (D.I. 30)

Prior to retaining current counsel in September 2009, Mangiapane filed, pro se, eleven pretrial motions, nine of which concerned discovery production by the government: (1) motion for disclosure of informants (D.I. 35); (2) motion for a list of trial witnesses (D.I. 36); (3) motion for Jencks Act materials in advance of trial (D.I. 37); (4)

---

[1]Because Dynkowski failed to appear for required court proceedings, the government's motion for a bench warrant for the arrest and apprehension of Dynkowski was granted on February 12, 2009. (D.I. 4) Dynkowski remains a fugitive.

[2]Riviello waved indictment and entered a plea of guilty to a felony information with notice of forfeiture on April 27, 2010. (D.I. 93, 94, 95)

[3]According to the government, the indictment alleges that in 2006-07, Mangiapane, Dynkowski and Riviello conspired to commit fraud with respect to the purchase and sale of securities in two over-the-counter stocks: GH3 International, Inc. and Asia Global Holdings Corp. (D.I. 47) The fraud scheme at issue is a form of stock market manipulation known as "pump and dump," wherein defendants and their co-conspirators are alleged to have obtained large blocks of shares in the aforementioned companies which were lodged in nominee accounts they controlled. The co-conspirators then "pumped" the market for the stocks using fraudulent means, creating artificial volume and price increases, and thereafter "dumped" the shares they controlled, presumably at a profit.

motion for production of grand jury testimony (D.I. 38); (5) motion to inspect the minutes

of the grand jury (D.I. 39); (6) motion for leave to file motions to compel discovery (D.I.

40); (7) motion for a pretrial conference (D.I. 41); (8) motion for a bill of particulars (D.I.

42); (9) motion for production of evidence favorable to the accused (D.I. 43); (10)

motion to dismiss the indictment due to misconduct occurring before the grand jury (D.I.

54); (11) motion to dismiss the indictment due to outrageous government conduct (D.I.

72); and (12) traverse petition and motion for evidentiary hearing (D.I. 57, 73). The

government filed an omnibus response to Mangiapane's discovery motions. (D.I. 47)

The government filed separate responses (including motions to strike) Mangiapane's

motion to dismiss and for a traverse petition and evidentiary hearing. (D.I. 56, 58)

During an April 13, 2010 teleconference,[4] defense counsel advised that

Mangiapane's pro se motions had been adopted (and in some instances augmented by

counsel); however, the following motions have been withdrawn: (1) Jencks Act

materials (D.I. 37); (2) pre-trial conference (D.I. 41); and (3) leave to file motions to

compel discovery (D.I. 40). (D.I. 90) After conferring with counsel, the court concluded

that Mangiapane's motion for a list of trial witnesses was premature (D.I. 36).

With respect to the remaining discovery motions: (1) Mangiapane's motion for

disclosure of confidential informant (D.I. 35) is denied without prejudice. Plaintiff shall

disclose said information no later than one week prior to the start of trial. *United States

v. Grant*, 256 F. Supp.2d 236, 243-44 (D. Del. 2003); *United States v. Beckett*, 889 F.

Supp. 152 (D. Del. 1995); (2) Mangiapane's motion to compel production of grand jury

---

[4]On March 18, 2010, the case was reassigned from the Honorable Joseph J. Farnan, Jr. to the undersigned.

testimony incorporating any trial witnesses' statements through an intermediary (D.I. 38) is denied without prejudice. Plaintiff is not required to produce the testimony of a grand jury witness who does not testify at trial. *United States v. Spurell*, 245 Fed. Appx. 127 (3d Cir. Aug. 17, 2007). Plaintiff shall produce, consistent with Jencks Act requirements, the grand jury statements of any witness who testifies at trial.; (3) Mangiapane's motion for discovery of grand jury minutes (D.I. 39) is granted insofar as plaintiff shall produce said minutes consistent with Fed.R.Crim.P. 16, the Jencks Act and/or *Brady/Giglio*; (4) Mangiapane's motion for a bill of particulars (D.I. 42) is denied, the court finding that the indictment provides the amount of information necessary to permit defendant to conduct his own investigation. *United States v. Stewart*, 2003 WL 21730636 at *1 (D. Del. July 23, 2003); (5) Mangiapane's motion for production of evidence (D.I. 43) is moot considering the parties' representations that voluminous discovery has been and continues to be exchanged. The court will revisit any of the aforementioned motions, if the parties encounter problems.

In light of these rulings, the court turns to address Mangiapane's motions to dismiss (D.I. 54, 72) and traverse petition for an evidentiary hearing (D.I. 57). The court has jurisdiction pursuant to 18 U.S.C. § 3231.

## II. BACKGROUND[5]

---

[5]To bring context to the pending motions, a brief background was compiled based upon the parties' briefs and exhibits, including search warrants and statements of probable cause. This summary, however, does not constitute the court's findings of facts pursuant to Fed.R.Crim.P. 12. The court finds an evidentiary hearing is unwarranted in light of the legal rulings set forth herein.

3

On February 8, 2007, a Texas State trooper ("trooper") stopped an Avis rental vehicle with South Carolina license plates for speeding. (D.I. 57 at 19)  The driver, Justin Woods ("Woods"), appeared nervous and gave conflicting information to the trooper.  Woods consented to a search of the vehicle, resulting in the discovery of $146,700 concealed in a D.H.L. bag and $8,600 hidden in a shoe located inside luggage

After receiving and waiving his Miranda rights, Woods agreed to be interviewed by the trooper.  Woods stated that in April 2006, his high school friend Matthew Brown ("Brown")[6] paid for him to vacation in Las Vegas, Nevada.  During that trip, Woods met Dynkowski.  Sometime prior to that Las Vegas trip, Woods was introduced to Mangiapane.  Woods stated that Mangiapane "was supposedly connected to organized crime though [Mangiapane's] father . . . with a history of extortion, gambling, book making and possession of stolen property."[7] (D.I. 54-1 at 3)

---

[6]Brown is a separately indicted defendant in a related case, *United States v. Matthew Brown*, Crim. No. 09–046-SLR.  Other related indictments pending in this court: *United States v. Pawel Dynkowski and Gerard D'Amaro*, Crim. No. 09-045-SLR; *United States v. Jacob Canceli*, Crim. No. 09-047-SLR; and *United States v. Angelo R. Panetta*, Crim. No. 09-007-SLR.

[7]Mangiapane suggests that Woods' arrest was the catalyst to the investigation and indictment. (D.I. 72)  Specifically, after the traffic stop, Texas law enforcement contacted law enforcement in California and Delaware, resulting in the execution of search warrants executed in Delaware and California.  According to Sergeant Vincent Luciano ("Luciano"), Woods stated that Mangiapane had ties to the mob through his father "who was connected in New York."  Apparently to investigate further, Luciano consulted a website, Hollywoodmafia.com, which reported that Mangiapane's father had stolen and sold publishing rights overseas for drugs and pornography. Mangiapane describes this website information as false and asserts that a modicum of an investigation would have resulted in Luciano discovering the falsehood.  However, Mangiapane asserts that Luciano chose to perpetuate these falsities and, in so doing, tainted and prejudiced the investigation.  By adding the "mafia" factor into the

4

On February 1, 2007, Brown hired Woods (and paid for his airline ticket) to fly to California to perform a "driving job" for Mangiapane. According to Woods, the driving job was to transport cash from Mangiapane in California to Dynkowski in Newark, Delaware in exchange for $10,000.

After his flight landed in California on February 6, 2007, Woods drove to Brown's residence. Brown gave Woods a D.H.L. bag containing $140,000 ("the currency") and another $10,000, representing payment for the driving job. While Woods stated that the currency was illegal, he did not know the source of the money. The following day, Woods started the drive from California to Delaware; on his way, he was stopped in Texas. Sometime thereafter, Woods began cooperating with law enforcement officers.

## III. DISCUSSION

### A. Motion to Dismiss

In his pro se motion to dismiss, Mangiapane raised two arguments: (1) he was denied the opportunity to testify before the grand jury; and (2) the government failed to provide the grand jury with allegedly exculpatory evidence and, instead, misled the grand jury. (D.I. 54) Had the grand jury had the benefit of his testimony as well as the exculpatory evidence he would have proffered, Mangiapane asserts an indictment would not have been returned.

---

investigation, Mangiapane further contends law enforcement was able to obtain warrants to search Brown's residence. Moreover, even after Woods' attorney informed the government that his client had recanted some of the statements previously provided, Mangiapane contends that the government continued its course of outrageous conduct by not informing the grand jury of this allegedly exculpatory evidence.

5

In order to dismiss an indictment on the grounds of prosecutorial misconduct, a defendant must demonstrate that the misconduct substantially influenced the grand jury's decision to indict, or that there is a grave doubt as to whether the decision to indict was free from substantial influence of prosecutorial misconduct. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 259, 263 (1988); *see also United States v. Soberon*, 929 F.2d 935, 939-40 (3d Cir. 1991) (applying the Bank of Nova Scotia standard); *United States v. Fisher*, 871 F.2d 444, 450 (3d Cir. 1989). A defendant must also show that he was prejudiced by the misconduct. *Bank of Nova Scotia*, 487 U.S. at 263.

The grand jury serves as a referee or buffer between the government and the people. *United States v. Williams*, 504 U.S. 36, 47 (1992). It is an accusatory body that sits "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* at 51; *Bracy v. United States*, 435 U.S. 1301, 1302 (1978).

An individual under investigation does not have the right to testify before the grand jury nor the right to have exculpatory evidence presented on his or her behalf. *Williams*, 504 U.S. at 52. Therefore, a district court may not dismiss an otherwise valid indictment on the ground that the government failed to disclose to the grand jury exculpatory evidence that was in its possession; "courts have no authority to prescribe such a duty [to disclose exculpatory evidence to the grand jury]." *Id.* at 55; *United States v. Minerd*, 299 Fed. Appx. 110, 112 (3d Cir. 2008).

6

Considering this authority, the court finds no basis to dismiss the indictment based on Mangiapane's arguments that he was denied the opportunity to testify before the grand jury or that the government failed to provide the grand jury with allegedly exculpatory evidence. While Mangiapane has presented (and the government has contested) various emails and letters that purportedly demonstrate, respectively, that his requests to testify before the grand jury were denied and exculpatory evidence withheld, it is unnecessary to determine the veracity of said documents or hold an evidentiary hearing because, even if true, neither compel dismissal of the indictment. Whether the evidence is sufficient to prove that Mangiapane committed the charges is a question for the jury, not this court.

## B. Outrageous Government Conduct Doctrine

Mangiapane next asserts that the indictment was the result of outrageous government conduct in violation of the Due Process Clause of the Fifth Amendment and should be dismissed. (D.I. 72) The United States Court of Appeals for the Third Circuit[8] has recognized that

> a criminal defendant may raise a due process challenge to an indictment against [him/]her based on a claim that the government employed outrageous law enforcement investigative techniques.

*United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998). In order for the challenged conduct to implicate "outrageousness," the "conduct must be shocking,

---

[8]In *United States v. Twigg*, 588 F.2d 373, 380-81 (3d Cir. 1978), the only case where the defense was successful and resulted in the dismissal of the indictment, the Third Circuit found that government agents and an informant had created new crimes for the sole purpose of pursuing criminal charges against individuals who were "lawfully and peacefully minding [their] own affairs.").

outrageous, and clearly intolerable . . . ." *Id.* at 231. However, "courts have experienced considerable difficulty in translating 'outrageous misconduct' into a defined sets of behavioral norms." *Id.* at 230. Nonetheless, "[t]his does not relieve [courts] from the obligation to enforce bounds of constitutional acceptability." *United States v. Lakhani,* 480 F.3d 171, 180-81 (3d Cir. 2007).

The "judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." *United States v. Voigt,* 89 F.3d 1050, 1065 (3d Cir. 1996). To that end, the Third Circuit has admonished that the doctrine is to be implicated only "in the face of the most intolerable government conduct" and "not each time the government acts deceptively or participates in a crime that it is investigating." *Lakhani,* 480 F.3d at 180 (citations and quotations omitted); *United States v. Pitt,* 193 F.3d 751, 761 n.11 (3d Cir. 1999) (collecting cases); *United States v. DeRewal,* 10 F.3d 100, 105 n.3 (3d Cir. 1993) ("in the 15 years since [the outrageous conduct doctrine] was decided, [the Third Circuit] has not found any case warranting dismissal of criminal charges on a similar ground").

The court finds the challenged misconduct, even if true, does not establish the extent of outrageous government conduct that would be necessary to prevail. Significantly, the alleged false and inflammatory information that was the alleged catalyst to the investigation and was included in the search warrants and presented to the grand jury occurred after the crimes had occurred. The Third Circuit has not recognized such conduct as sufficiently outrageous to implicate the doctrine and the court finds that none of the conduct was demonstrably outrageous or intolerable or

8

even close to meeting the rigorous standards enunciated in *United States v. Nolan-Cooper*, 155 F.3d at 230-231; *United States v. Montgomery*, 336 Fed. Appx. 221 (3d Cir. 2009); *United States v. Georgiou*, 2009 WL 4641719 (E.D. Pa. December 7, 2009).

## C. Traverse Petition and Motion for Evidentiary Hearing

In his pro se traverse petition and motion for evidentiary hearing, Mangiapane seeks to suppress evidence obtained during the search of Brown's residence (in Orange County, California) and, essentially, requests a *Franks* hearing to challenge the search warrants and supporting affidavits. (D.I. 60 ex.1; D.I. 57)   Defendant contends that the probable cause statement used to obtain the warrant of Brown's house was based on false information subsequently repudiated Woods.

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . . ." U.S. Const. Amend. IV.   A defendant arguing for suppression of evidence obtained in violation of the Fourth Amendment must establish that his Fourth Amendment rights were violated by the challenged search or seizure.   *United States v. Padilla*, 508 U.S. 77, 81 (1993); *United States v. Hebron*, 243 F. Supp.2d 90, 92 (D. Del. 2003).

To establish standing, the party challenging the legality of the search bears the threshold burden of establishing that he or she had a reasonable expectation of privacy in the property searched and the item seized.   *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *Minnesota v. Carter*, 525 U.S. 83 (1998); *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000).   For a defendant to establish a reasonable expectation of privacy in

9

a searched dwelling, he must show both a subjective expectation of privacy and that the expectation is objectively reasonable. *See Minnesota v. Olson*, 495 U.S. 91 (1990); *United States v. Baker*, 221 F.3d 438, 441 (3d Cir.2000).

A defendant who lacks a reasonable expectation of privacy in the place searched is foreclosed from invoking the protections of the Fourth Amendment. *United States v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002). The defendant "who is aggrieved by an illegal search and seizure through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Forth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. at 133-34; *see e.g., United States v. Gray*, 491 F.3d 138, 154 (4th cir. 2007) (no reasonable expectation of privacy in a codefendant's apartment).

Considering this authority against the record, it is evident that Mangiapane lacks standing to challenge the search of Brown's residence. Mangiapane has failed to demonstrate any privacy interest in the residence. He does not contend that he lived at the house, that he stayed at the house for any period of time, that he was ever invited into the house, had a key to the house or had the authority to exclude others from the residence. *Perez*, 280 F.3d at 336-37; *United States v. Huggins*, Crim. No. 03-91-SLR, 2004 WL 2434301, at *1 (D. Del. Oct. 21, 2004); *Warner v. McCunney*, 259 Fed. Appx. 476, 477-78 (3d Cir.2008). Mangiapane has also not demonstrated any possessory interest in any of the items seized. Absent a showing of an expectation of privacy, there cannot be a Fourth Amendment violation of Mangiapane's rights as a result of the

10

search.  Mangiapane has no standing to challenge the admissibility of evidence obtained by the government during that search.

## D. Franks Hearing

A defendant may challenge the veracity of factual statements appearing in an affidavit of probable cause by what is commonly referred to as a *Franks* hearing. *Franks v . Delaware*, 438 U.S. 154 (1978).  To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing" that the affidavit contained a false statement that was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause.  To make this "substantial preliminary showing," a defendant cannot rest on "mere conclusionary allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citations omitted).  "If the purportedly false statement was necessary to the probable cause determination, the court must conduct a hearing, during which 'the defendant must ultimately prove by a preponderance of the evidence that:  (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant; and (2) such statements or omissions were material, or necessary, to the probable cause determination." *Id.*; *United States v. Scott,* 673 F. Supp. 2d 331, 337 (M.D. Pa. 2009).

11

In light of the court's finding that Mangiapane lacks standing to challenge the search, he likewise is foreclosed from challenging the statements contained in the affidavits.

## IV. CONCLUSION

For the reasons discussed above, defendant's motions to dismiss and traverse petition for an evidentiary hearing are denied.  An order consistent with this memorandum opinion shall issue.